# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-01358-SCT

*LEROY STEWART*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/29/2007 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BRENDA JACKSON PATTERSON |
| | LESLIE S. LEE |
| | PAMELA A. FERRINGTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/17/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.

### RANDOLPH, JUSTICE, FOR THE COURT:

¶1.     Leroy Stewart ("Stewart") was incarcerated in the Jefferson-Franklin Correctional Facility following a conviction for the sale of cocaine. While an inmate, Stewart was charged with possession of marijuana in a correctional facility. At trial in the Circuit Court of Jefferson County, the State presented testimony from an inmate and correction officers that Stewart had attempted to "plant" a brown paper bag containing marijuana upon that inmate. Stewart testified he did not possess the marijuana and offered the testimony of his brother and two fellow inmates to support his version of the event. The jury found Stewart

guilty as charged. He was sentenced to seven years, to run consecutively to his then-current sentence. Stewart appeals his conviction.

**FACTS**

¶2.     The State's witnesses included inmate Jethrell Knight, corrections officer Terry Robinson, and Clifton Kaho, the chief of security at the correctional facility. Around noon, Knight was sitting alone at a table, with no other individuals nearby,[1] when Stewart exited the visitation room and entered lockdown. According to Knight:

> [Stewart] came to the table, I didn't know what was going on. He had a brown bag – tried to put a brown bag in my arm [that Stewart removed from either his pants or shirt]. I opened my arm and the brown bag fell to the floor. . . . [T]he guard picked the bag off the floor, and they questioned me . . . . What was in the bag, I didn't have no idea until they told me . . . . They come back and told me, "Do you know what you're getting yourself in?" I said, "What you mean?" They say, "This bag have marijuana in it." I say, "It's not mine because [Stewart] tried to put it in my arm and I let it hit the floor and the guard picked it up."

Robinson recalled the incident, as follows:

> [Stewart] was coming back from visitation, and I was in control one, and I was coming around to shake them down. He had a brown paper bag trying to push it down his pants. And as I was coming toward him,[2] he went to another inmate and dropped the paper bag on the inmate's lap. I got it off his lap, and [Stewart] come behind me and tried to snatch the bag out of my hand.

In the brown paper bag, Robinson found a substance he suspected to be marijuana. He contacted Kaho. Knight subsequently gave a statement to Kaho, telling him "the same thing I told you what happened." This was corroborated by Kaho, who stated that "[a]fter a brief confrontation with [Knight], he admitted that Stewart threw the dope in his lap."

---

[1]Robinson corroborated there was no one else in the room.

[2]According to Robinson, "he seen me coming . . . ."

¶3.     Just prior to the subject incident, Sammy Stewart ("Sammy") visited his younger brother, Stewart, at the correctional facility, along with another brother, Rosco Stewart, and nephew, Derrin Barnes. According to Kaho, "I exited the visitation area, and witnessed [Sammy] came to visit [Stewart] and [Sammy] *wasn't pat searched*. He went through the metal detector." (Emphasis added). Kaho testified that this was standard procedure, "if the officer is tied up and working short, normally we'll allow them to come through the metal detector. If they go off, they normally will pat search them and have probable cause to search them."

¶4.     In addition to testifying on his own behalf and denying possession of the marijuana, Stewart called Sammy and two fellow inmates, Jerome Banks and Orlando Luckett. Collectively, they presented the jury with a very different version of the events of that day, beginning hours before Sammy's arrival. At approximately 8:30 a.m., Knight had been taken into lockdown to await transport to Warren County, Mississippi. Knight testified that fifteen to twenty people were in the lockdown area walking around. While awaiting transport, Knight had a conversation with Banks. According to Banks, Knight "told me that he got some marijuana and he didn't want to carry it back to Warren County because he didn't know how they're going to shake him down." Banks conceded he did not see any marijuana, but he testified that he "seen [Knight] go in his pants and come out with a brown paper bag . . . ."[3] Knight denies any conversation he had with Banks was related to marijuana.

¶5.     Regarding his visitation, Sammy testified that:

---

[3]Banks did not report this conversation to prison officials and first informed Stewart of it, some ninety days later, while "in modification in Parchman."

3

we approached the correctional part, and by the time we made the entrance, I forgot I had an earring in my ear, and they told me I couldn't come in with the earring, so I went to the car and took it back, and there was a female that went before me, and they took her in the room and searched her down. Then I went through the metal detector, raised my hand and they pat searched me down.

Upon entering the visitation room, Stewart's visitors found it filled to capacity.[4] They sat across the table from Stewart and, following a brief visit, left the correctional facility. Both Stewart and Sammy testified that nothing was given to Stewart.

¶6.     Luckett, another inmate, testified that as he was leaving the visitation room, "[Robinson] was getting ready to search me. I asked him what had just happened, and he told me . . . ." Luckett testified that "[Robinson] said he saw [Knight] putting something in his pants. So he walked to him and he come out with it. He said he's assuming that Stewart gave it to him. He said he didn't see him give it to him. He just assumed that." Upon arriving back at his cell, Luckett informed Stewart of his alleged conversation with Robinson. Robinson denied making such a statement to Luckett, or any other inmates.

¶7.     The suspected marijuana was transferred to the Mississippi Bureau of Narcotics, which delivered the evidence to the Mississippi Crime Laboratory. Analysis confirmed that the evidence consisted of nineteen grams of marijuana.

¶8.     Stewart was indicted for possession of nineteen grams of marijuana, a controlled substance, at the correctional facility, contrary to and in violation of Mississippi Code

---

[4]According to Sammy, there were "[p]robably about 25 [other visitors] because we barely did get a seat. We had to wait until someone get up."

Annotated Section 47-5-198 (Rev. 2006). The indictment added that because of his prior felony convictions,[5] Stewart was a habitual criminal.

¶9. Following the State's case-in-chief, Stewart moved for a directed verdict "on the grounds that the [S]tate has not established a prima facie case against the defendant." The circuit court overruled the motion. After resting, Stewart then submitted a peremptory instruction of not guilty, which likewise was denied by the circuit court. Subsequently, the jury found Stewart guilty as charged and the circuit court sentenced him "to serve a term of seven (7) years with the [MDOC] with said sentence to run consecutive to the sentence currently being served by [Stewart] herein."

¶10. On July 2, 2007, Stewart filed a "Motion for New Trial, or alternatively, for Judgment Notwithstanding the Verdict," which was denied by the circuit court. On July 5, 2007, Stewart filed his "Notice of Appeal."

**ISSUE**

¶11. This Court will consider:

(1) Whether the circuit court erred in overruling Stewart's motion for directed verdict, in denying his request for a peremptory instruction of not guilty, and in denying his motion for judgment notwithstanding the verdict.

---

[5]On July 8, 1996, Stewart "pled guilty in the Circuit Court of Warren County, Mississippi, to the crime of Robbery, . . . a felony under the laws of the State of Mississippi, in Cause Number 12276V, and was sentenced by the [c]ourt to serve a term of ten years in the custody of the Mississippi Department of Corrections [("MDOC")] . . . ." On December 14, 2001, Stewart "pled guilty in the Circuit Court of Warren County, Mississippi, to the crime of Sale of Cocaine, a felony under the laws of the State of Mississippi, in Cause Number 010296CRV and was sentenced by the [c]ourt to serve a term of thirty years in the custody of the [MDOC] . . . ."

**ANALYSIS**

¶12.    The subject motions and request of Stewart:

> are procedural vehicles for challenging the *sufficiency* of the case for the prosecution. Each requires that the court consider all of the evidence before it at the time the motion is considered. *When the sufficiency of the evidence is challenged on appeal, this Court properly should review the Circuit Court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court.*

*Wetz v. State*, 503 So. 2d 803, 807 (Miss. 1987) (emphasis added). We consider all evidence before the circuit court when it denied Stewart's motion for judgment notwithstanding the verdict. "[J]ury verdicts will not be disturbed except under the most dire of circumstances." *Anderson v. State*, 904 So. 2d 973, 977 (Miss. 2004) (quoting *King v. State*, 798 So. 2d 1258, 1261 (Miss. 2001)). Therefore, in our analysis:

> the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968). *The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

*Jones v. State*, 904 So. 2d 149, 153-54 (Miss. 2005) (emphasis added).

¶13.    We "accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and . . . disregard evidence favorable to" Stewart. *Anderson*, 904 So. 2d at 977. Accepting the State's evidence as true and viewing that evidence "in the light most favorable to" the State, this Court concludes that the evidence was sufficient for a "rational trier of fact" to find "the essential elements of the crime beyond

6

a reasonable doubt." *Jones*, 904 So. 2d at 153-54. Therefore, this Court concludes that Stewart's argument that the evidence was insufficient is without merit.

## CONCLUSION

¶14.   Based upon the aforementioned analysis, this Court affirms the Circuit Court of Jefferson County's decision to deny Stewart's motion for judgment notwithstanding the verdict, as well as the conviction for possession of marijuana in a correctional facility and sentence of seven years, to be served consecutively to his prior sentence.

¶15.   **CONVICTION OF POSSESSION OF MARIJUANA IN A CORRECTIONAL FACILITY AND SENTENCE OF SEVEN (7) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVE TO THE SENTENCE CURRENTLY BEING SERVED BY LEROY STEWART.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**